THE AMERICAN STEEL FOUNDRIES, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(VIRGIL COCHRAN, Defendant in Error.)

*Opinion filed December 21, 1927.*

WORKMEN'S COMPENSATION—*when an award will be set aside.* Where there is no evidence in the record to show a personal injury traceable to the employment except the fact that the disability began while the employee was at work, and where the cause of the disability is clearly shown to have been not an accidental injury but a tubercular condition, an award of compensation for the disability must be set aside.

WRIT OF ERROR to the Circuit Court of Madison county; the Hon. J. F. GILLHAM, Judge, presiding.

WHEELER & OEHMKE, (W. C. DUNHAM, of counsel,) for plaintiff in error.

MACDONALD & MORGAN, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The circuit court of Madison county confirmed an award made by the Industrial Commission in favor of Virgil Cochran against his employer, the American Steel Foundries, for temporary total disability, and a writ of error has been awarded to the employer to review the judgment.

Cochran was employed in the wheel department of the plaintiff in error's foundries, operating an electric crane, which ran upon a track suspended fifteen feet in the air. He operated it from a cage beneath the track, nine feet above the floor. The track ran parallel with and eighteen or twenty feet from the front of a line of four furnaces in which wheels were annealed by heating. The furnaces were charged by putting wheels into them through doors, of which there were twelve in their fronts. The furnaces were eighteen feet long and were stoked from the ends opposite the charging doors. Soft coal was used, and the smoke and gases originating from it escaped from the foundry through ventilators in the peak of the roof, fifty or sixty feet above the floor. There were no gases from the metals. The furnaces were not stoked during the charging and no smoke escaped at such times. After the charging the furnaces were stoked and some smoke escaped around the charging doors. The operator's duty was to move a controller, which was similar to the controller of a street car and was operated about as easily.

On May 7, 1925, Cochran was operating the crane. About five minutes before the completion of the charging a sharp pain struck him in his right arm. He testified that before the pain struck him the smoke made his lungs burn. He continued working about a minute and his arm became so paralyzed that he could not use it. He pulled the ladder to the cage and went down. There was also a sharp pain in the right lung in the middle part and up to the shoulder-blade and he was short of breath. When he got down he told the foreman that he was going to the dispensary. He said that his lung was swelling, and the lump could be seen through his shirt. He walked a block to the dispensary, resting awhile on the way, and was weak and aching. Dr. Purnell there told him that he had a hole in his lung and took him to a hospital, where he remained seven and a half days under the treatment of Dr. Purnell, who gave him

medicine and required him to sit in a certain position and be quiet. After leaving the hospital he stayed at home, where Dr. Purnell called upon him two or three times and told him to get out in the air, stay away from the foundry and change climates. His lung was still swollen, he was weak, short of breath, unable to do anything, and had to walk slowly. His testimony was given November 11, 1925. Dr. Purnell saw him about three weeks after he left the hospital and he had no medical treatment after that time. When he tried to pick up anything heavy his arm felt like catching right in the shoulders. His lung hurt when he took a deep breath. He went back to work November 5, working on a construction job, paving streets and concreting, shoveling dirt, and so on. He had worked three days since. He never was sick before.

Aside from the testimony of Cochran that his lung swelled, the evidence showed, without contradiction, that the disability from which he suffered was not caused by anything connected with his work. At the hospital, on May 7, Dr. Harney made a complete examination of Cochran, including an X-ray. He testified that the lung was not swollen but collapsed, and there was some collapse of the intercostal spaces of the right chest as contrasted with the ribs of the left chest, and the right chest was slightly smaller than the left. The X-ray confirmed the clinical findings showing pneumothorax, which is a complete collapse of the lung. Pneumothorax is the result of any breaking in the external layer of the pleura. The mechanism of the operation resulting in pneumothorax was explained by Dr. Harney in his testimony before the commission, as follows: "The lungs of the human body are in the chest cavity. There is air in the chest cavity. The air pressure there is approximately the barometric pressure of the air outside. That air comes in contact with the outer covering of the lungs. On the right side there are three lobes of the lung, known as lung tissue proper. Next to

this tissue is a covering of serous membrane known as the visceral pleura. And then there is a space, varying from a quarter of an inch in front to possibly almost direct contact, between two serous linings,—an external serous covering, known as the parietal pleura, and the visceral pleura. There is an air space between these two linings and there is a moisture that allows of the gliding of these two serous membranes on each other. If you liken the lung to a sac containing the air that comes into the lungs through the trachea and that comes in contact with the inside of the lung, the covering that encases this sac,—the encasing sac of the lung,—would be the internal or visceral pleura. That is surrounded by air as far as the second or external, called the parietal, pleura. Between the parietal pleura and the visceral pleura there is a little air space. There is no air pressure from the chest cavity against the visceral pleura; it is against the parietal pleura. The parietal pleura is held in place, to resist this air pressure on the outside of the body, by the ribs, and on the inside of the body by connective tissue and by the attachment of these connective tissues to fixed tissues. If the parietal pleura is punctured that would let air into the little air space between the parietal and visceral pleura. The result, if that happens, is a collapse of the lungs."

On his examination before the arbitrator Dr. Harney testified: "There is a hilus type of tubercular infection, and the glands in the area of the hilus of both lungs showed evidences of tubercular inflammation. Hilus type is a type of infection that occurs just at the point where the bronchial tubes enter the lung tissue. * * * Pneumothorax is the result of any breaking in the external layer of the pleura. There are two layers: the visceral and parietal layers. If outside air pressure is allowed to come into this space between the layers the lung collapses. It may come into any place that will break and make an opening in the parietal pleura. In my opinion the tubercular gland broke

down in this area, which resulted in allowing the air to enter this space and the lung collapsed.  *  *  *  The hilus glands are not inside of a lung structure.  No, sir; they are outside of the pleura.  They have no connection with the lung tissues.  They are in the hilus outside of the lungs themselves.  *  *  *  He did not have an extreme inflammation.  He had a little area that did not need to be larger than the tip of the finger.  It probably was not larger than a small pea or bean."  Dr. Harney further testified that "at the time the collapsed lung showed there was nothing to indicate active tuberculosis, but in the later picture a fairly recent activity shows in the calcified glands."  The later pictures were taken September 25, 1925.  They showed hilus type of inflammatory changes, with calcification of the hilus glands.  The doctor concluded that the break in the pleura which caused pneumothorax in Cochran occurred at the hilus gland, the evidence thereof being the healing process of calcification shown to have occurred there.  No suggestion is contained in the evidence that pneumothorax could have occurred in any other way than by the entry of air into the space between the parietal and visceral pleura.  Unquestionably, the right side of Cochran's chest was depressed by the collapse of the lung rather than swollen, as he supposed and testified.

Dr. Samuel A. Levey, a specialist in X-ray work and who took an X-ray picture of Cochran's lungs on October 17, 1925, was called by Cochran and testified that it showed "two sides of the lungs comparatively normal.  The right side shows a little darker than the left, which would mean that the right side is receiving somewhat more air than the left.  The glands at the hilus, at the center of the lungs, are slightly enlarged.  There is some infiltration around the bronchi, which is evidently due to some chronic inflammation.  I see no evidence of active tubercular process or pneumothorax or pleurisy of the lungs."  He further testified that the bronchial infiltration shown by the picture

might have had some connection with the breathing of smoke, fumes and gas, but that that was merè supposition on his part.

Dr. Harney testified that he was familiar with the furnaces and conditions at the foundry, and that the breathing of the smoke from the furnaces in these rooms would not have produced or accelerated any condition found in Cochran on May 7, 1925. The cause of his disease was an ulceration of one of these glands in this area perforating the external pleura covering. Cochran had some slight evidence of a low grade of bronchitis, such as most city dwellers carry. There was no medical condition there and he has now recovered from the condition he had.

There is a conflict in the evidence as to the extent to which Cochran, working in his cage, was subjected to air charged with coal smoke. Cochran testified that when the door was raised there was always smoke coming out at those times; that just before he felt this pain the smoke was about the same. The superintendent of the wheel department testified that no smoke came out of the charging doors when the charging was being done. John Preissly, who was also operator of a crane there, testified to the same effect, and that such smoke as comes from the furnaces goes up and out the ventilators, not coming closer to the operator than twenty feet.

No evidence tended to show that a smoky condition of the atmosphere caused or could cause the collapse of a lung, which was the disability from which Cochran suffered. Even the bronchial condition was not shown to have resulted from smoke which was in the atmosphere there at the plant, nor did the bronchial condition cause disability. The only possible cause for the collapsing of the lung suggested by the evidence was a tubercular condition at the hilus gland, which ate a small hole through the parietal pleura, permitting the entry of air into the lung covering. It is apparent that the evidence not only did not show

that the disability resulted from an accidental injury arising out of and in the course of Cochran's work, but the contrary. "It is not the province of this court to weigh conflicting evidence and substitute its judgment for that of the commission unless we can say that the finding of the commission is clearly and manifestly against the weight of the evidence." (*Armour Grain Co.* v. *Industrial Com.* 323 Ill. 80.) But where there is no evidence in the record to show a personal injury traceable to the employment or the finding of the commission is manifestly against the weight of the evidence, the award will be set aside. (*Bell Telephone Co.* v. *Industrial Com.* 325 Ill. 102; *Union Colliery Co.* v. *Industrial Com.* 317 id. 428; *Sincerity Coal Co.* v. *Industrial Com.* 320 id. 251.) Here there was no evidence that Cochran suffered an accidental injury which arose out of and in the course of his employment except the fact of his disability occurring while he was at work, and the cause of his disability was clearly shown to have been not an accidental injury but a tubercular condition which permitted the access of air to the space between the visceral and the parietal pleura.

From Cochran's testimony that Dr. Purnell advised him to get out in the open air, stay away from the foundry and change climates, counsel for the defendant in error infer that Dr. Purnell's real opinion was that the smoke and gas in the foundry were the cause of Cochran's condition. No such conclusion can be fairly drawn. Dr. Purnell testified that he advised fresh air and sunshine because of the tubercular condition, and that seems reasonable.

The judgment of the circuit court is reversed and the award of the Industrial Commission is set aside.

*Judgment reversed and award set aside.*