(No. 19402.—

CARROLL A. BERRY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(GEORGE CHILDS, Defendant in Error.)

*Opinion filed June 19, 1929.*

W. C. ROPIEQUET, (ROPIEQUET & FREELS, of counsel,) for plaintiff in error.

EDWARD E. ADAMS, and ARTHUR YOCKEY, (ELLEN M. YOCKEY, of counsel,) for defendant in error.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

George Childs filed with the Industrial Commission a claim for compensation for an accidental injury which he alleged he suffered while employed by Carroll A. Berry. The arbitrator denied compensation. The Industrial Commission heard additional evidence and found that the claimant had sustained the complete and permanent loss of vision in his left eye, and awarded him $175 for necessary first aid, medical, surgical and hospital expenses, and compensation at the rate of $14 per week for 110 weeks. On review the circuit court of Christian county vacated the award of the commission and found that the claimant was entitled to expenses for the purposes and in the sum fixed by the commission and to compensation at the rate of $9.61 per week for 110 weeks. Upon the employer's petition this court awarded a writ of error for a further review.

On May 23, 1927, George Childs, twenty-nine years of age, married, and a resident of the city of Taylorville, in Christian county, was employed by the plaintiff in error upon a building then under construction. While using a hammer and chisel in the process of leveling a concrete

overhead sill, Childs was struck in the eye by some particles of concrete. A fellow-employee, Earl Lipe, attempted to wash the substance from Childs' eye by blowing water into it. Childs' wife and Mrs. Emma McCaskill, a neighbor, shortly afterwards examined the eye but could find nothing in it. Paul Oller, who acted as superintendent in the absence of the plaintiff in error, advised Childs to have his eye examined by Dr. D. D. Barr, a local specialist in diseases of the eye, ear, nose and throat. On the evening of the same day Dr. Barr removed some particles of concrete from the lower *cul de sac* and found some irritation of the lower scleral margin of the eye. The doctor gave Childs an eye-wash to be used by him at home. He wore a bandage over the eye part of the time and continued to work for the plaintiff in error. Childs testified that he received various treatments from Dr. Barr, and that on one occasion he told him he thought something remained in his eye, but that the doctor, without making an examination, merely gave him a preparation to use in it. Dr. Barr neither remembered nor did he make any charge for any visit by Childs between May 23 and July 14. About July 14, 1927, Childs was engaged in making repairs upon his automobile at home. While cutting a bolt with a chisel and hammer a piece of steel or rust flew from the chisel, bolt or hammer and his vision became dimmed. He consulted Dr. Barr shortly thereafter, who found nothing on his first examination but on the following day removed some rust from the corner of Childs' left eye. Childs returned to work and continued his employment until the latter part of July. He told his employer and fellow-employees that he thought a piece of steel had struck him in the eye. About July 23 he visited Dr. Barr, who upon a further examination found that an ulcer had formed on the cornea. The doctor treated him for the ulcer on that and the succeeding day, but the patient did not return thereafter. About the last of July Childs' left eye burst, at which time, he testified, he changed

the cotton with which he had bandaged it and found some particles of concrete. He later consulted Dr. William F. Hager, a physician residing in the city of Pana, who found that practically the whole of the cornea had become ulcerous and that the infection had progressed to the last membrane of the eye. Dr. Hager advised the removal of the eye, and the operation was performed on August 4, 1927.

On review Childs testified that he was convinced no substance entered his eye when he worked on his automobile at home because he then wore spectacles and experienced no such sensation as would follow the striking of the eye, and also because nothing was taken from the eye after that injury. This testimony is inconsistent with the statements he made to his employer and fellow-employees, and with his testimony before the arbitrator that he thought a piece of steel struck him in the eye at the time, and it contradicts the testimony of Dr. Barr that he removed some rust from Childs' eye following the second injury.

The evidence shows that Childs sustained two injuries to his left eye, the first within, and the second without, the course of his employment. He was not incapacitated for work, however, until after the second accident, and there was no evidence of the presence of an ulcer until nine days after that injury. Dr. Barr observed the condition of the eye after both injuries and he discovered the ulcer. It was his opinion that if either injury had any causal connection with the ulcer, the second was more likely to have been the cause than the first, although he did not believe that either injury caused the ulcer to form. Dr. Hager first saw the eye when it was ulcerated to a great extent. He stated that an ulceration usually results from an infection but that it might also be caused by some systemic condition. He expressed the opinion that a cut on the eye might produce an ulcer, but he did not state that a cut on Childs' eye caused the ulcer in question. The evidence shows that the ulcer formed on the cornea, while the particles of cement

or concrete were taken from the lower *cul de sac*. Hence there was no evidence that the ulcer was of traumatic origin.

It is incumbent upon the claimant, under the Compensation act, to prove by direct and positive evidence, or by evidence from which the inference can be fairly and reasonably drawn, that the accidental injury arose out of and in the course of his employment. (*Madison Coal Corp.* v. *Industrial Com.* 320 Ill. 298; *Edelweiss Gardens* v. *Industrial Com.* 290 id. 459.) While this court is not warranted in reversing the finding of the commission unless the award is shown to be clearly against the manifest weight of the evidence, (*Donk Bros. Coal Co.* v. *Industrial Com.* 325 Ill. 193; *Inland Rubber Co.* v. *Industrial Com.* 309 id. 43; *Aladdin Coal Co.* v. *Industrial Com.* 308 id. 35; *Keller* v. *Industrial Com.* 302 id. 610;) yet it is the duty of the courts to weigh and consider the evidence in the record, and if it is found that the decision of the commission is without substantial foundation in the evidence it must be set aside. (*Inland Rubber Co.* v. *Industrial Com. supra.*) Liability under the Workmen's Compensation act cannot rest upon imagination, speculation or conjecture or upon a choice between two views equally compatible with the evidence but must be based upon facts established by a preponderance of the evidence. (*Byram* v. *Industrial Com.* 333 Ill. 152; *Illinois Bell Telephone Co.* v. *Industrial Com.* 325 id. 102; *Standard Oil Co.* v. *Industrial Com.* 322 id. 524; *Atlas Brewing Co.* v. *Industrial Com.* 314 id. 196; *Madison Coal Corp.* v. *Industrial Com. supra.*) The evidence fails satisfactorily to show that the loss of Childs' left eye resulted from an accidental injury which arose out of and in the course of his employment by the plaintiff in error.

The judgment of the circuit court is reversed and the award of the Industrial Commission is set aside.

*Judgment reversed and award set aside.*