(No. 21413.—

LEILA CRUZAN, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(THE JACKSONVILLE TRANSFER AND STORAGE COMPANY, Inc., Plaintiff in Error.)

*Opinion filed October 22, 1932—Rehearing denied Dec. 9, 1932.*

ORR and JONES, JJ., dissenting.

Henry Kneller, and George W. Hunt, for plaintiff in error.

Hairgrove & Absher, for defendant in error.

Mr. Chief Justice Heard delivered the opinion of the court:

Leila Cruzan, widow of Kirk Cruzan, filed her claim under the Workmen's Compensation act for compensation on account of the death of her husband, an employee of plaintiff in error, the Jacksonville Transfer and Storage Company. The arbitrator who heard the cause found that the deceased did not come to his death by reason of an accidental injury arising out of and in the course of his employment and that the claimant was not entitled to compensation. On review the Industrial Commission confirmed the decision of the arbitrator. On *certiorari* the circuit court of Morgan county set aside and vacated the decisions of the Industrial Commission and the arbitrator and remanded the cause to the Industrial Commission with directions to hear further evidence. After hearing evidence produced by both parties the Industrial Commission adhered to its former decision and again confirmed the decision of the arbitrator. On *certiorari* the circuit court of Morgan county set aside the second decision of the Industrial Commission and entered an award against plaintiff in error, and in favor of the claimant, for $4200, payable at the rate of $11 per week. The cause is here by leave of this court on writ of error.

The testimony before the arbitrator disclosed that on April 1, 1929, about two o'clock in the afternoon, the deceased, with two other men, Virgil Lane and Ray Steele, were putting some furniture on an elevator in the storage

company building; that among this furniture was a little toy trunk, which was on the floor; that the deceased reached down to pick up this toy trunk but did not pick it up; that as he reached down to pick up the trunk he groaned; that he said to his foreman (Lane) at that time, "I feel pretty sick;" that he walked to the back of the storage room and sat down on a box; that he said he was "pretty sick" but believed that he would get all right; that he laid down on some furniture pads for about thirty-five or forty minutes, during which time he was given an aspirin tablet and a glass of water and was then taken to his home; that he seemed to be suffering considerable pain; that in the morning of that day he had made some complaint to Steele to the effect that there was something the matter with his stomach and on previous occasions had said that he had a bad stomach.

Dr. T. O. Hardesty was called to attend deceased at his home late in the afternoon of April 1 and found him lying on the bed with his legs thrown up and very rigid, unable to straighten out, and in a great deal of pain. Upon examining him the doctor found that the right upper abdomen was very tender. He could not diagnose the trouble as appendicitis, as it was in the right hypochondriac region of the abdomen and too high for appendicitis. The doctor removed the patient to the hospital, where an operation was performed on April 2 by him and Dr. H. C. Woltman, which operation disclosed a perforation of the duodenum about six millimeters in diameter and about an inch from the pyloric end of the stomach, the contents of the bowel pouring out into the abdominal cavity, and a condition of general septic peritonitis, which condition caused his death and which condition resulted from the extravasation into the peritoneal cavity through the perforation in the bowel. The operation disclosed a mass of acute adhesions caused from the septic peritonitis, and the peritonitis, which caused his death, was after, and not before, the perforation of the duodenum.

The consensus of the testimony of the medical witnesses was that the perforation of the duodenum was the result of duodenal ulcers found to be present. These ulcers are progressive in character and cover a considerable period of time in formation and development. They undergo a deteriorating process, which is known to the layman as an "eating" process. It is a destructive process, and it depends upon the activity of the ulcers as to whether it extends over a longer or a shorter period of time. The process of destruction is generally slow, and as a result of the eating and destruction of the tissue the duodenum becomes gradually weaker and weaker at the point of the ulceration until finally the process of disintegration gets to the point where there may be perforation at any time, and, as stated by one of the witnesses, "it doesn't make any difference as to the topographical location where the man happens to be at the time the perforation takes place." It may take place at any time and under any circumstances where there is any intra-abdominal pressure. Sneezing, a fit of coughing, a turning in bed, a straining at stool or an effort to pick up a shoe may produce it. The primary cause of the perforation is the disintegration of the ulcer.

There must be some cause or relation between the injury and the employment, and if the injury is sustained by reason of some cause having no relation to the employment it does not arise out of the employment. It is not enough that the injured person may be present at the place of the accident because of his work unless the injury is the result of some risk of the employment. (*Becker Roofing Co.* v. *Industrial Com.* 333 Ill. 340; *Gooch* v. *Industrial Com.* 322 id. 586.) Where a workman dies from a pre-existing disease, if the disease is aggravated or accelerated under circumstances which can be said to be accidental his death results from the injury by accident, but where there is no evidence in the record to show a personal injury traceable

to the employment and the finding of the circuit court is in his favor and contrary to the finding of the commission the finding of the circuit court will be set aside. (*American Steel Foundries* v. *Industrial Com.* 327 Ill. 615.) One claiming compensation under the Compensation act for the death of an employee must prove by direct and positive evidence, or by evidence from which the inference can fairly and reasonably be drawn, that death was caused by an accidental injury which occurred not only in the course of the employment of the deceased but also arose out of such employment. While compensation may be awarded even though there is a pre-existing disease, if the disease is exaggerated or accelerated by an accidental injury the accidental injury must be the immediate or proximate cause of death. Neither the Supreme Court nor the circuit court is warranted in reversing the finding of the Industrial Commission unless it is shown to be clearly against the manifest weight of the evidence. *Chicago and Northwestern Railway Co.* v. *Industrial Com.* 341 Ill. 131.

While, undoubtedly, the perforation of the duodenum was the cause of the death of the claimant's husband and such perforation took place while he was in the course of his employment with the company, yet the findings of the Industrial Commission and of the arbitrator that the employment was not the primary cause of the death and that it did not arise out of such employment were not contrary to the manifest weight of the evidence.

The judgment of the circuit court is reversed and the decision of the Industrial Commission confirmed.

*Judgment reversed.*

Mr. JUSTICE ORR, dissenting:

The evidence in this case does not, in my judgment, warrant the holding of the majority opinion that sickness or disease was the primary cause of Kirk Cruzan's death. The facts clearly indicate that he died as a result of septic

peritonitis due to a ruptured duodenum, the immediate cause of the rupture arising from an injury sustained while employed in the direct line of his duty. All of the medical evidence discloses that this injury was caused by increased intra-abdominal pressure when deceased stooped over to pick up a small trunk. He was then suddenly stricken with an acute abdominal pain, which caused him to cry out and want to lie down. The post mortem showed that a duodenal ulcer existed and had weakened the walls of the intestine at that point to the extent that any sudden pressure or contraction of the abdominal muscles would easily produce the fatal rupture. While this rupture, as the majority opinion states, might have occurred at other times and places and from some other act while the employee was not engaged in his employer's business, the fact nevertheless remains that it did not so occur. In *Cameron, Joyce & Co. v. Industrial Com.* 340 Ill. 632, this court said that "even where a workmen dies from a pre-existing disease, if the disease is aggravated or accelerated under certain circumstances which can be said to be accidental, his death results from injury by accident." Under facts very similar to those here involved this court has consistently pronounced this same doctrine in many cases, notably in *Carson-Payson Co. v. Industrial Com.* 324 Ill. 497, *Powers Storage Co. v. Industrial Com.* 340 id. 478, and *Peoria Terminal Co. v. Industrial Board,* 279 id. 352. No reason now appears for varying from this doctrine or refusing its application to the facts in the present case. Therefore I respectfully dissent from the opinion of the majority and the judgment therein expressed.

Mr. JUSTICE JONES concurs in the foregoing dissenting opinion.