(No. 22047.—

THE E. R. HARDING COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(DELL ROGERS, Defendant in Error.)

*Opinion filed December 22, 1933—Rehearing denied Feb. 13, 1934.*

SHANNER & SHANNER, for plaintiff in error.

ROBERT E. LARKIN, for defendant in error.

Mr. JUSTICE JONES delivered the opinion of the court:

Dell Rogers on May 10, 1929, was employed by the E. R. Harding Company in loading sawed wood into a truck. The wood lay near a buzz-saw, under a shed hav-

ing a roof but no sides. Rogers claims that the wind blew sawdust into his left eye while he was throwing a piece of wood into the truck, and that after he had finished loading the wood he went into the office of the time-keeper, Daniel Rief. He was not able to locate Rief at that time but did succeed in doing so about 6:30 o'clock the next morning, when, he says, he reported the accident and told the time-keeper he would have to quit work. The accident occurred in Niles Center, Cook county. Rogers lived in Streator, LaSalle county. He received medical treatment from doctors for a considerable length of time. August 24, 1929, he filed an application for adjustment of compensation under the Workmen's Compensation act. December 29, 1930, the arbitrator declined to make an award, and on July 23, 1930, the Industrial Commission confirmed the decision of the arbitrator. December 22, 1931, the circuit court of Cook county, on *certiorari,* remanded the cause to the Industrial Commission for a further hearing. June 8, 1932, the Industrial Commission entered an award in favor of Rogers for $19 a week for 18-5/7 weeks, and $19 for a further period of 120 weeks for the total and permanent loss of the use of his left eye. The commission also allowed $297 for medical, surgical and hospital expenses. The circuit court of LaSalle county sustained and confirmed the award March 11, 1933. The cause is before us on writ of error.

More than three years intervened between the date of the accident and the date of the award by the Industrial Commission. The record shows that there were a number of pathological changes between those dates. In 1921 Rogers was operated for exopthalmic goitre and afterwards did hard work. On May 10, 1929, except for symptoms of goitre, he was apparently a robust man, but exopthalmos, or protrusion of the eyes, was apparent. The left eyeball was inclined outward and downward. Rogers did not wear glasses in the performance of his work. The

first doctor who treated him after the accident was Dr. B. O. Bendixen, of Streator. Dr. Bendixen found an abrasion in the lower central portion of the cornea, with incipient infection. There was a severe edema or swelling of the lining of the eyelids. The infection developed into an ulcer. The ulcer condition improved and Dr. Bendixen sent the patient back to Niles Center.

Dr. H. W. Woodruff, of Joliet, examined Rogers' eyes on July 18, 1929, and received a history of the accident and observed the ulcer and the infection. He stated that the ulcer was quite a distance from the inferior oblique muscle and was at least twelve millimeters from the nearest contact. He noticed symptoms of non-purulent cellulitis. In November, 1929, Dr. Woodruff and Dr. Bendixen made another examination and found the ulcer had healed, leaving a slight scar. No infection was then present. Exopthalmos was prominent in both eyes. About a year subsequent to this examination, November 2, 1930, Dr. Woodruff again saw the patient and discovered a paralysis of the inferior oblique muscle of the left eye. He also observed that the eyeball no longer turned downward and outward but now turned downward and inward. The deflection or strabismus was of such degree that it caused diplopia, or double sight—that is to say, his eyes failed to focus together and he saw two images instead of one. As a result of these conditions Rogers is compelled to wear over his left eye a frosted glass or some other screen against light and therefore has totally and permanently lost the use of that eye.

When compensation was originally denied by the arbitrator and the Industrial Commission Rogers' eye turned downward and outward but there was no evidence of diplopia. When the case came on for hearing after remandment the deflection of the left eyeball had reversed and diplopia was present. There is no material disagreement among medical experts as to the salient facts pertaining to

the condition of the eye and its loss of use. The conflict arises over the cause which produced the condition. Counsel for Rogers claims there is a causal connection between the injury and the paralysis of the muscle, which destroyed the use of the eye in an industrial sense, and counsel for plaintiff in error claim there is not. The latter insist that it is impossible for the condition to have been a result of the injury. Both sides agree that the deflection of Rogers' left eyeball is due to paralysis or paresis of the inferior oblique muscle—a long, thread-like muscle which attaches itself on the orbital margin, near the lower portion of the orbit. It extends backward rather beneath the eyeball, then upward to its place of insertion. By contraction of this muscle the eyeball is rotated upward and outward. If the muscle becomes weakened or paralyzed, the eyeball, for lack of support, turns inward and downward. That is now the position of Rogers' left eyeball. The muscle here involved is controlled by the third nerve, which is a peripheral nerve emanating from the central nervous system—a system of spinal and cranial nerves.

The theory of defendant in error is that the muscle became paralyzed because of the inflammation produced by the ulcer and resultant pressure. The physicians who testified for him did not say there was a lesion of the third nerve. Whatever doubt there may be about a lesion of this nerve, the undoubted weight of testimony shows that there was a lesion of the central nervous system. It is the theory of plaintiff in error that the paralysis of the muscle was due entirely to the lesion of the central nervous system. Every doctor who examined Rogers' reflexes testified there was an absence of the knee, tendo-Achilles and abdominal reflexes. A great deal of unnecessary testimony was introduced to show whether or not Rogers ever had syphilis. The doctors agreed that syphilis is the most frequent cause of lesion of the central nervous system, but they say there are other causes as well. In this case it is

immaterial what caused the lesion, if it actually existed. Rogers was examined by six physicians after his eye had changed its deflection from left to right on account of the paresis of the inferior oblique muscle. Each one of these physicians testified that paralysis of that muscle may result from a lesion of the central nervous system. Dr. Fred Miller testified that the paresis of the muscle is traceable to a lesion of the central nervous system. Dr. Sidney Walker testified that he had never seen or heard of a case of paresis of the inferior oblique muscle caused by infection of the conjunctiva. Dr. LeRoy Thompson testified to the same effect. Dr. Earl Vernon testified likewise, and also said he had never seen paralysis due to inflammation, and that he knew of no medical authority which says inflammation can cause paralysis. There was a universality of opinion among the witnesses that goitre would neither produce a lesion of the central nervous system nor cause paralysis of the inferior oblique muscle. Under the testimony in this case the question as to the cause of the paresis of the muscle involved depends upon whether it was occasioned by inflammation and pressure as a resultant effect of the ulcer or was due to a lesion of the central nervous system. No witness testified that Rogers did not have a lesion of the central nervous system, nor does anyone deny that such a lesion may not destroy the involved muscle. The evidence strongly preponderates in favor of the theory that a lesion of the central nervous system existed.

Aside from the technical medical evolvements, it was definitely proved that in the summer and fall of 1929 the ulcer in the cornea healed, a scar tissue formed over it, the inflammation largely abated and the inferior oblique muscle functioned normally. It was not until November 2, 1930, that Dr. Woodruff, one of the physicians who treated Rogers and also one of his witnesses, discovered the paralysis. He had treated Rogers several times. Dr. Bendixen had treated him a greater number of times. It

is evident that they had no thought, prior to November 2, 1930, that the above mentioned muscle was involved, and it was probably not involved at a much earlier date. The reversal of orbital deflection due to the collapse of the muscle undoubtedly occurred quickly and not progressively, otherwise it would have been sooner discovered by Dr. Bendixen, who said he saw Rogers from one to three times a month.

The rule is that if the findings of the Industrial Commission on the facts are against the manifest weight of the evidence the award must be set aside. (*County of Cook* v. *Industrial Com.* 327 Ill. 79; *Hahn* v. *Industrial Com.* 337 id. 59.) The burden was upon the defendant in error to prove that the loss of the use of his eye was the result of an accident which occurred in the course of his employment. He has failed to produce that quantum of proof. The liability of an employer under the Compensation act cannot be based on a choice between two views even if they are equally supported by evidence. The liability must be based upon facts established by the evidence. In this case the preponderance of evidence does not lead to the conclusion that the loss of the use of the eye was due to an accidental injury. It convinces us that the loss was due to an extraneous cause wholly unrelated to the employment. The evidence fails satisfactorily to show that the loss of the use of Rogers' left eye resulted from an accidental injury which arose out of and in the course of his employment by the plaintiff in error.

The judgment confirming the award of the Industrial Commission must be reversed and the award set aside. *Berry* v. *Industrial Com.* 335 Ill. 374.

*Judgment reversed and award set aside.*