(No. 2196—

RAY YOST, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 13, 1934.*

KIRBY SMITH, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. JUSTICE YANTIS delivered the opinion of the court:

This claim was filed June 23, 1933 for Ten Thousand Dollars ($10,000.00). The declaration claims that claimant was arrested for vagrancy in June 1932 and was sentenced by the County Court of Jefferson County to the State Farm at Vandalia for a period of six months; that after being there something over three months, claimant became ill and was taken to the private hospital of Greer & Greer at Vandalia, where an operation was performed for ulcers and perforations of the duodenum. Claimant remained in the hospital twenty-two days and was released October 15, 1932

from the hospital and from custody and returned to his home at Mt. Vernon.

Claimant was assigned to duties of bath house attendant while at the State Farm, and now claims "that the conditions under which he lived and conduct imposed by reason of restrictions, and confinement and the daily incidents of prison life resulted in the specific ailment of ulcers of the duodenum" for which petitioner files his claim for resultant loss of earning power as above stated.

None of the decisions cited by the claimant appeal to the court as being in point. The State Farm is one of the State institutions and in maintaining it the State is exercising its governmental functions. It has been held repeatedly that in the conduct of its charitable and penal institutions, neither the State nor any of its agencies are liable for damages caused by the negligence of those in charge of or employed in such institutions. *Lillian Sturroch etc.* vs. *State,* 7 Court of Claims, No. 157.

The testimony of Dr. Greer states that he performed the operation in question; that the history of claimant's condition given at the time he entered the hospital at Vandalia was that he had been treated for ulcers of the stomach for a considerable time and further was a habitual user of narcotics; that such diseased condition is the result of a gradual necrosis of the tissue of the duodenum and that in the opinion of the doctor, claimant had had the ulcers when he entered the State Farm and that such diseased condition was undoubtedly present prior to June 6, 1932. In the case of *Cruzan* vs. *Industrial Commission,* 350 Ill. 407, the court said:

"The consensus of the testimony of the medical witnesses was that the perforation of the duodenum was the result of duodenal ulcers found to be present. These ulcers are progressive in character and cover a considerable period of time in formation and development. They undergo a deteriorating process, which is known to the layman as an 'eating' process. It is a destructive process, and it depends upon the activity of the ulcers as to whether it extends over a longer or a shorter period of time. The process of destruction is generally slow, and as a result of the eating and destruction of the tissue the duodenum becomes gradually weaker and weaker at the point of the ulceration until finally the process of disintegration gets to the point where there may be perforation at any time, and, as stated by one of the witnesses, 'it doesn't make any difference as to the topographical location, where the man happens to be at the time the perforation takes place.' It may take place at any time and under any circumstances where there is any intra-abdominal pressure. Sneezing, a fit of coughing, a turning in bed, a

straining at stool or an effort to pick up a shoe may produce it. The primary cause of the perforation is the disintegration of the ulcer.

There must be some cause or relation, between the injury and the employment, and if the injury is sustained by reason of some cause having no relation to the employment it does not arise out of the employment. * * *

One claiming compensation under the Compensation Act for the death of an employee must prove by direct and positive evidence, or by evidence from which the inference can fairly and reasonably be drawn, that death was caused by an accidental injury which occurred not only in the course of the employment of the deceased but also arose out of such employment."

In no event, either as a legal proposition nor by adopting the theory of equity and social justice alone (which this court could not do), could this claim be allowed. The claim is therefore denied and dismissed.