(No. 3133—)

NELLIE McKEE, WIDOW OF WALTER McKEE, DECEASED, Claimant, *vs.*
STATE OF ILLINOIS, Respondent.

*Opinion filed February 14, 1939.*

JOHN W. FRIBLEY, for claimant.

JOHN E. CASSIDY, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

Mr. Chief Justice Hollerich delivered the opinion of the court:

On several occasions prior to July 1st, 1937, one Walter McKee was employed by the Division of Highways of the Department of Public Works and Buildings of the respondent. On the last mentioned date he was working with the maintenance patrolman in District No. 7, and was engaged in repairing the State highway designated as U. S. No. 40, at a point approximately two miles east of the City of Vandalia.

On said 1st day of July, McKee and the maintenance patrolman were engaged in the work of "cutting expansion joints," which work consisted of cutting the asphalt which raised above the level of the concrete, at the various expansion joints, as the result of the expansion of the concrete slab on account of the heat. The work of cutting was done with a scraper (an instrument similar to a straightened-out hoe) with a wire attached to the lower part of the blade. In using this instrument the patrolman pulled on the wire, and McKee pushed on the handle. They continued cutting expansion joints until noon, at which time they drove to a small shed where their supplies were kept, and ate their lunch. After lunch, to wit, at one o'clock P. M., and before leaving the shed, they loaded their truck with fine crushed rock, and a barrel containing asphalt, having a total weight of from 150 to 200 pounds. In loading such barrel, one man was on each side, and they lifted or tipped it into the truck, the box being four feet above the ground. The evidence indicates that the work of cutting expansion joints was more strenuous than the work of lifting the barrel onto the truck.

After loading the truck, they drove out on the highway and commenced repairing holes in the pavement. The truck was left on the highway, and the patrolman did the repair work just in front of it, while McKee stood behind the truck

with a flag, for the purpose of directing the traffic and thereby protecting the patrolman. After they had been working about fifteen minutes, being between two and three o'clock P. M., and while the patrolman was engaged in repairing a hole in the pavement, he heard McKee cough twice, and looking up, saw that McKee was bleeding from the mouth and nose. He immediately placed him on the truck and started for Vandalia. The bleeding continued and the patrolman stopped at a station and called for an ambulance. As soon as the ambulance arrived, McKee was placed therein, but died before he reached the hospital.

The evidence discloses that on July 7, 1936 (approximately one year prior to his death) McKee sustained a heat stroke while working for a private construction company engaged in the construction of buildings at the Vandalia Penal Farm. Dr. A. R. Stanbury of Vandalia attended him at that time and diagnosed McKee's condition as "cerebral hemorrhage causing a pressure on the vocal cord and causing the inability of the vocal cord to act." Prior to that time McKee had been a very stout man, and in good health. After the heat stroke, however, he did not recover his former condition, was subject to spells of coughing, and could hardly speak above a whisper.

McKee was a married man, and his widow, Nellie McKee, is the claimant in this proceeding. She contends that the exertion of lifting the barrel containing asphalt into the truck was the cause of the death of her husband; that the injury arose out of and in the course of his employment; and that she is entitled to the compensation provided by the terms and provisions of the Workmen's Compensation Act of this State.

The respondent contends that there was no causal connection between McKee's employment and his death; that he did not die as the result of an accidental injury which arose out of his employment; and that there is no liability on the part of the State for his death.

The only medical evidence in the case is the testimony of Dr. Stanbury who treated McKee at the time of his heat stroke on July 7, 1936, and for some time thereafter. Dr. Stanbury, however, stated that he had not treated McKee at any time within six months prior to his death, and made no examination of the body at the time of death. The evidence discloses that no post mortem examination was made, and no autopsy was performed.

Claimant's case rests almost entirely upon the testimony of Dr. A. R. Stanbury who stated that, in his opinion, the sunstroke "paralyzed some of the upper part of the bronchial tube and the lungs" and also gave it as his opinion that such paralysis caused an aneurism of the arteries of the upper part of the lung; that the hemorrhage sustained on July 1st, 1937 was caused from the aneurism in the upper part of the lung.

Dr. Stanbury on direct examination was asked the following question: "Doctor Stanbury, based upon your own knowledge of the conditions of Walter McKee which you observed in your treatment of him during the year before he died, based upon your knowledge of medicine and your practice of medicine and surgery over a period of twenty-eight years, and based upon the testimony of Curt Kile which you have listened to, who was the witness who immediately preceded you, and upon the stated fact that Walter McKee had during the morning of the date of his death been engaged in cutting asphalt from expansion joints in the hard road during which period of time he used a scraper holding it by a handle before him, pushing against this handle with his hands and chest, and upon the fact that he immediately prior to his death had lifted a barrel of asphalt weighing one hundred and fifty to two hundred pounds, have you an opinion based upon a reasonable degree of medical certainty as to what caused the death of Walter McKee?";—to which question he replied that he had an opinion and expressed such opinion as follows: "My opinion is that this exertion kept thinning the aneurism down until there was no more protection and with just a little exertion it might burst it, which caused his death."

The question propounded to Dr. Stanbury was apparently intended to be, but was not, a hypothetical question. Furthermore, it was based in part, upon the doctor's knowledge of the condition of Walter McKee which he observed in his treatment of him during the year before he died, but the doctor had previously stated that he had not examined McKee for six months prior to his death, and did not examine him at the time of his death, nor did he make a post-mortem or perform an autopsy.

Dr. Stanbury's opinion was also based in part, upon the hypothesis that in cutting the asphalt from expansion joints, McKee was holding the scraper by the handle, pushing against

such handle with his hands and with his chest, and upon the further hypothesis that immediately prior to his death McKee had lifted a barrel of asphalt weighing 150 to 200 pounds. There is no evidence in the record whatsoever that the handle of the scraper at any time came in contact with McKee's chest, and the testimony with reference to lifting the barrel of asphalt was that such barrel was lifted by the maintenance man and McKee jointly, and that the time of such lifting was at least an hour prior to the time of the hemorrhage.

In his cross-examination, Dr. Stanbury was asked (Transcript page 34): "So your opinion as to the cause of death is more or less based upon the evidence of what occurred at that time:";—to which he replied: "The history of the case and other cases similar of that type, that is the only thing that I have. I wouldn't say that that is correct, but it is my opinion."

Although Dr. Stanbury was the McKee family physician, yet he could not properly be called the treating physician of Mr. McKee, as he had not treated him for at least six months prior to the time of the hemorrhage, and did not make an examination of him at or after the time of the hemorrhage. Not being the treating physician, his opinion, based in part upon the history of the case, was not competent evidence. *Wells Bros. Co.* vs. *Ind. Com.*, 306 Ill. 191; *Lehigh Stone Co.* vs. *Ind. Com.*, 315 Ill. 431; *Powers Storage Co.* vs. *Ind. Com.*, 340 Ill. 498.

Furthermore, he did not qualify, or attempt to qualify, as an expert witness.

Considered from any angle, the opinion of Dr. Stanbury does not constitute the basis for an award.

Our Supreme Court has held in numerous cases that in proceedings under the Workmen's Compensation Act, the rules respecting the admission of evidence and the burden of proof are the same as those that prevail in common law actions for personal injury. *Chicago Daily News Co.* vs. *Ind. Com.*, 306 Ill. 212; *Kivish* vs. *Ind. Com.*, 312 Ill. 311; *Atlas Brewing Co.* vs. *Ind. Com.*, 314 Ill. 196-200; *Mehay* vs. *Ind. Com.*, 316 Ill. 97-102.

Such court has also held in numerous cases that liability under the Workmen's Compensation Act cannot rest upon imagination, speculation, or conjecture, or upon a choice between two views each compatible with the evidence, but must

be based upon facts established ·by a preponderance of the evidence; and there can be no award where death ensues from a pre-existing disease and not from an injury. *Berry* vs. *Ind. Com.*, 335 Ill. 374-377; *Conreaux* vs. *Ind. Com.*, 354 Ill. 356; *Harding Co.* vs. *Ind. Com.*, 355 Ill. 139-144; *Sanitary District* vs. *Ind. Com.*, 343 Ill. 236-242.

The question as to the proper meaning of the words "arising out of" and "in the course of," has come before the courts in numerous cases. In McNicol's Case, 215 Mass. 487, the Supreme Court of Massachusetts said:

"An injury arises 'out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a casual connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person, familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises out of the employment, but it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence."

This definition has been approved by our Supreme Court in numerous cases. *Central Illinois Service Co.* vs. *Ind. Com.*, 291 Ill. 256; *Vincennes Bridge Co.* vs. *Ind. Com.*, 351 Ill. 444; *Mazursky* vs. *Ind. Com.*, 364 Ill. 445.

The difficulty in this case lies not so much with the principles of law involved, as with the application of the facts to such principles.

In the case of *American Steel Foundries Co.* vs. *Ind. Com.*, 327 Ill. 615, an employee named Cochran was operating an electric crane in the foundry of the respondent. The crane was operated from a cage about ten feet above the floor and about eighteen or twenty feet from the furnaces. The operator's duty was to move a controller, which was similar to the controller of a street car, and was operated about as easily. While operating the crane a sharp pain struck the employee in his right arm. He testified that before the pain struck him the fumes·from the furnaces made his lungs burn.

There was no question but what defendant's lung col-

lapsed, and the only question in the case was whether such collapse was the result of gases escaping from the furnace or whether it resulted from some other cause. There was medical testimony to the effect that the collapse of the lung was the result of a tubercular condition of the hilus gland, which ate a small hole through the parietal pleura, permitting the entry of air into the lung covering.

After considering the testimony the court said:

"It is apparent that the evidence not only did not show that the disability resulted from an accidental injury arising out of and in the course of Cochran's work, but the contrary. * * *

"Here there was no evidence that Cochran suffered an accidental injury which arose out of and in the course of his employment except the fact of his disability occurring while he was at work, and the cause of his disability was clearly shown to have been not an accidental injury but a tubercular condition which permitted the access of air to the space between the visceral and the parietal pleura";—

and reversed the decision of the Industrial Commission and the decision of the Circuit Court allowing an award.

Numerous other cases of a similar nature have come before our Supreme Court, but a complete review thereof would serve no useful purpose, as each case is based upon its own peculiar facts, and a brief reference to a few of such cases will suffice.

The case of *New Staunton Coal Co.* vs. *Ind. Com.*, 307 Ill. 408, involved a miner who was stricken while shoveling coal into a car; the case of *Selz-Schwab & Co.* vs. *Ind. Com.*, 326 Ill. 120, involved a worker in the stock room who was stricken while in the performance of the usual duties of his employment; the case of *Hahn* vs. *Ind. Com.*, 337 Ill. 59, involved a pipe fitter who fell from a ladder on which he was standing, while engaged in cutting a groove in a post; the case of *Jolly* vs. *Ind. Com.*, 341 Ill. 46, involved a hotel employee who became sick while engaged in the performance of her usual duties in the kitchen. A physician was summoned and found that she was suffering from a strangulated hernia. An operation was performed the same day, and she died a few days later.

The case of *Cruzan* vs. *Ind. Com.*, 350 Ill. 407, involved an employee who died from the effects of peritonitis following perforation of the duodenum due to duodenal ulcers, the perforation occurring while the employee, in the performance of his duties, was stooping down to pick up a toy trunk;—and

in each of such cases the Supreme Court held in substance that the plaintiff had failed to establish a causal connection between the accident and the death; had failed to prove an accidental injury arising out of the employment;—and denied an award. In the last mentioned case, the court said:

"There must be some cause or (causal?) relation between the injury and the employment, and if the injury is sustained by reason of some cause having no relation to the employment it does not arise out of the employment. It is not enough that the injured person may be present at the place of the accident because of his work unless the injury is the result of some risk of the employment.

\* \* \* \* \* \* \* \* . \* \*

"One claiming compensation under the Compensation Act for the death of an employee must prove by direct and positive evidence, or by evidence from which the inference can fairly and reasonably be drawn, that death was caused by an accidental injury which occurred not only in the course of the employment of the deceased but also arose out of such employment. While compensation may be awarded even though there is a pre-existing disease, if the disease is exaggerated or accelerated by an accidental injury the accidental injury must be the immediate or proximate cause of death."

The facts in the present case show that at no time prior to the hemorrhage did McKee complain to the patrolman with reference to the work, or with reference to his own physical condition; that the work of cutting expansion joints was more strenuous than the work of lifting the barrel into the truck; that the work of cutting expansion joints occupied the entire morning, and the lifting of the barrel into the truck was done at least one hour prior to the time the decedent sustained the hemorrhage; that McKee did not undergo any exertion of any kind from the time the barrel of asphalt was loaded into the truck until he started coughing just prior to the hemorrhage, aside from the ordinary work of getting on and off the truck and standing on the pavement holding a flag.

Dr. Stanbury stated that in his opinion the aneurism was located in the upper part of the left lung. He was then asked the following question: "If there were an aneurism in the upper part of the left lung, how long an interval would there be between the bursting of such aneurism and the expulsion of blood through the mouth?";—to which he replied, "Immediately." He also stated that the bursting of an aneurism might occur to a man wandering down the street; that it might result from almost an imperceptible amount of exertion; that it could be caused by mental excitement or nervous strain, by jumping off a wagon, or a sudden jar.

If the exertion connected with the work of lifting the barrel of asphalt into the truck was the cause of the hemorrhage, it would seem, under the testimony of Dr. Stanbury, that death would have resulted almost immediately thereafter. The fact that the hemorrhage did not result for more than an hour after the asphalt was loaded into the truck, would tend to prove that the exertion in loading such asphalt was not the cause of the hemorrhage.

From all of the competent evidence in the record, we are of the opinion that the claimant has failed to establish that the death of Mr. McKee was the result of an accidental injury arising out of his employment, and award must therefore be denied.