(No. 2938— )

EDWARD WEIMER, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed September 8, 1942.*

ANDREWS & YOUNG, for claimant.

GEORGE F. BARRETT, Attorney General; GLENN A. TREVOR AND ROBERT V. OSTROM, Assistant Attorneys General, for respondent.

CHIEF JUSTICE DAMRON delivered the opinion of the court:

Edward Weimer, the claimant, on September 24, 1935, while employed by the respondent in the Division of Highways, Department of Public Works and Buildings as a laborer in Henry County was injured by falling off a truck which moved unexpectedly, so that claimant fell upon the upright handle of a shovel crushing and injuring himself, in the region of the urethra.

On the following day he reported to and was treated by Dr. J. M. Young of Kewanee, Illinois, who found upon examination that the claimant's bladder was filled with blood and the urethra was constantly hemorrhaging. Claimant's bladder was washed with warm antiseptic solution and was irrigated for many days. A catheter was used by the physician two or three times a day.

On November 27th, 1935, Dr. Young filed an accident report with the Division of Highways in which he stated:

"I removed blood from the bladder by irrigation each day. Allayed irritation and finally got him so he could urinate, and injury repaired. He has discontinued treatment so he probably returned to work."

On February 11, 1936, claimant again called at Dr. Young's office for further treatment, complaining of soreness in his back and at the point of injury and stated he was not able to work. Dr. Young stated that in view of the fact that almost three months had passed since his last examination of the injured he felt that he was not in a position to make a statement that this condition is the direct result of the accident and for this reason suggested that claimant be taken to a G. U. Specialist for an examination to determine whether or not complications had arisen from the injuries sustained at the time of the accident.

The claimant was taken to Chicago on orders of the Division of Highways, and was examined by Dr. Charles M. McKenna, Professor of Urology, College of Medicine of the University of Illinois. This examination took place at Dr. McKenna's office in Chicago on April 7th, and at the St. Joseph's Hospital on April 8th.

The evidence consists of the testimony of the claimant and Dr. J. M. Young on his behalf, and of Dr. Charles M. McKenna on behalf of respondent. Claimant testified that he was fifty years of age at the time of the accident, and claimed to be wholly disabled, and unable to do any manual labor, however his testimony shows that on July 5th, 1938 he was employed by the W. P. A., which required him to sand at the schools, paint and varnish and to do the raking at the athletic field. He continued in this employment until April 5, 1939. That since that time he has done no work of any kind, because he was bothered with his back. That his legs became swollen when he worked, and at that time he was unable to do anything except house work. He gave his weight at about two hundred forty pounds.

The question before the court is whether or not claimant is permanently disabled as the result of the injury suffered September 24, 1935, and it is incumbent upon claimant under the law to establish by a preponderance of the evidence a causal connection between the injury and his claimed present ill-being.

Dr. J. M. Young, in qualifying as a witness testified that he had practiced as a physician for twenty three years. That he graduated from Loyola University in 1913, that he had served internships in the Norwegian Deaconess Hospital, the Central Manufacturers District Hospital, and Lying-In Hospital all in Chicago, Illinois. He was asked:

Q. "What is the nature of your practice in Annawan of recent years?"
A. "Well, it is about half surgery and half medical."

In answer to a question Dr. Young testified:

"At the time of my first treatments I found that claimant had a mass in the region of the prostatic urethra, by rectal bi-manual examination, and a mass in the bladder about the size of two fists which was rather firm. On examining the point of injury, there again was a spongy mass. In the last examination I made of him there was little that I could determine for sure other than the symptoms stated by the patient, because it was practically disappeared. I couldn't feel anything. I would judge this was in February 1937."

He was asked the following questions and made the following answers:

Q. "Prior to this examination in February when was the last time you made an examination before that?"

A. "I couldn't say because at various times when he would come in I would look at him and express an opinion that he seemed to be doing alright. After the examination .in Chicago I didn't examine him because I felt that they were more capable than I, and I did not go into detail or make any further examination."

Q. "Doctor, you do not specialize in urology?"

A. "No, sir."

Q. "Nor diseases of the genito-urinary system?"

A. "No, I do not."

Q. "Then, with the exception of this blood that you observed in February, 1937, after the masses to which you have made reference were dissipated, there were no objective symptoms in any of your examinations, is that correct?"

A. "Yes, sir."

Q. "And you based your analysis and formed your opinion from the subjective symptoms that were given to you by the claimant himself?"

A. "Yes, sir."

Dr. Charles M. McKenna testified on behalf of respondent. In qualifying as an expert he stated he had been admitted to practice medicine in the State of Illinois in 1905, and has practiced continuously since that time. That he was head of the Department of Urology of the University of Illinois.

It is unnecessary for the court to recite the qualifications of Dr. Charles M. McKenna since the attorney for the claimant admits that Dr. McKenna was without question an accomplished and highly reputed specialist.

Dr. McKenna testified regarding his findings of the examination he made of the claimant on the 7th and 8th of April, 1936. He stated that he used a cystoscope; catheter on both kidneys and made an examination of the specimen which was negative. On examination of the bladder it appeared to be normal. The vesicle neck appeared to be normal. That this was confirmed by the fact that he had no difficulty in passing a 28 sound, and no obstruction was encountered. That he found no abrasion or stricture in the urethra. The urethral examination revealed a prostate normal for a man of his years.

Dr. McKenna was asked the following questions:

Q. "Doctor, did you find any objective symptoms that would cause pain in the back in the region where the belt goes around, in any of your examinations?"

A. "No, I didn't find anything like that. Most of his symptoms referred to the crotch where he was struck."

Q. "A blow such as the claimant gave you a history of, would, if causing an injury, cause what injury?"

A. "Such an injury possibly, that might occur with that kind of a blow, would be to the urethra such as a rupture or trauma sufficient to produce a stricture, which was negative on the examination."

It is the duty of this court to weigh and consider the evidence in the record and if it is found that the evidence fails to support the averments in the complaint this court must deny the claim. Liability under the Compensation Act cannot rest upon imagination, speculation or conjecture or upon a choice between two views equally compatible with the evidence, but must be based upon facts established by a preponderance of the evidence.

Berry vs. Ind. Comm., 335 Ill., 374.

And further, awards for compensation cannot be based upon possibilities or probabilities, but must be based upon sufficient evidence showing that claimant has incurred a disability arising out of and in the course of his employment.

Standard Oil Co. vs. Ind. Comm., 322 Ill., 524.

In the view we take of this record the claimant has failed to prove by a preponderance of the evidence that there is a causal connection between the subjective symptoms and the trauma received on September 24, 1935, an award for permanent total disability accordingly must be denied.

Claimant, however is entitled to an award for temporary total disability. He was injured on September 24, 1935, and the period of temporary total disability could not by any reason extend beyond April 8, 1936, the date of the examination by Dr. Charles M. McKenna, and probably did not extend that long. On that date his condition was found to be normal, and will be taken by this court as the period of temporary total disability.

From September 24, 1935 to April 8, 1936, is a period of twenty-eight (28) weeks. Under Section 8(b) of the Workmen's Compensation Act claimant is entitled to fifty per cent of his weekly earnings during the period of his total disability. Claimant's rate of pay was fifty cents an hour for eight hours a day. On a minimum basis of two hundred

days a year with an eight hour day, the annual wage would be $800.00 or $15.38 weekly wage. His compensation rate, therefore would be $7.69. At that rate for twenty-eight weeks equals $215.32 due claimant for temporary total compensation.

It appearing that claimant was paid $52.50 for unproductive work this amount must be deducted from the award leaving a sum due claimant of $162.82.

An award is further entered in this case for the use of Dr. J. M. Young for services rendered to claimant, as per exhibits, in the sum of $63.54, making a total award of $226.36.

An award is therefore entered in favor of claimant in the sum of $226.36, all of which has accrued and is now payable in a lump sum.

This award being subject to the provisions of an Act entitled "An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof," approved June 30, 1941, and being by the terms of such Act, subject to the approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the Road Fund in the manner provided for in such Act.