(No. 18047.—Judgment reversed and award set aside.)
THE ILLINOIS BELL TELEPHONE COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(MARY K. MULLIGAN, Defendant in Error.)

*Opinion filed April 20, 1927.*

WORKMEN'S COMPENSATION—*when evidence does not sustain an award.* To sustain an award there must be evidence in the record showing a personal injury traceable to the employment, and where witnesses positively deny the testimony of the employee that she reported the alleged accident, which physicians, in answer to hypothetical questions, say may possibly have caused the disability, and there are no other circumstances of injury in the course of employment, the evidence does not sustain an award of compensation.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. HARRY M. FISHER, Judge, presiding.

CUTTING, MOORE & SIDLEY, (EDWIN C. AUSTIN, and J. DWIGHT DICKERSON, of counsel,) for plaintiff in error.

BOWE & BOWE, for defendant in error.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This writ of error is prosecuted by leave of court to review the judgment of the circuit court of Cook county confirming an award of the Industrial Commission in favor of defendant in error, Mary K. Mulligan.

On Saturday, October 8, 1921, defendant in error was employed by plaintiff in error as a switchboard operator

at its main office in the city of Chicago and had been so employed for nearly two years. In her work she used a head-set, which held the receiver to her right ear. She testified that while she was working at her board about noon she "got an awful bang in the ear;" that the noise was so violent that she could neither speak nor hear for an instant; that her ear and head began to ache and continued to ache until her collapse the following day; that as soon as she recovered her speech she reported to her supervisor, Miss Brussow, that she had sustained a bang in the ear which had made her ill and that she would have to go home; that the supervisor refused to permit her to leave her work; that she was suffering from a severe earache and headache and was trembling so that she worked with difficulty; that she told other girls working near her about the bang in the ear; that she had to change the head-set so that she could use her left ear, because she could not hear with her right ear; that she continued to work until 5:30 P. M. and then went home; that she suffered with earache and headache throughout the night and did not sleep well; that she arose about ten o'clock Sunday morning, had breakfast and then went to church; that she became ill during the church service and had to return home; that she ate a light lunch about 12:30 P. M. and then went to her room; that about two P. M., while she was stooping over a dresser drawer, her left side became paralyzed and she fell to the floor; that she was removed to Mercy Hospital, where she remained for about two months; that she regained some use of her left arm and left leg and continued to improve until May 1, 1922, when she returned to work; that she was given a light board, so that she could operate it with her right hand alone, and that she continued her employment with the company until March 6, 1924, when she was discharged because she was unable to do her work satisfactorily. She testified further that she reported on Monday, October 10, to Miss Stuber, a supervisor employed by plaintiff in error

to visit employees who were absent from work because of illness, that she was injured at her employment Saturday noon, and asked her whether the company would pay her hospital bill and would compensate her for her disability, and that Miss Stuber replied that it would. The supervisor visited her occasionally until she was able to return to work, but she was not attended by any of the company's physicians until May, 1922. When she reported for work she was examined by physicians employed by the company, and these examinations were repeated from time to time throughout the period of her employment. Her two sisters, with whom she occupied the apartment in which she lived, paid the hospital bill and the attending physician's bill. They did not ask the company to pay these bills until after defendant in error had been discharged.

Margaret Mulligan, a sister of defendant in error, testified that at the time of the accident they lived together in an apartment on the third floor at 4300 Ellis avenue; that she was at home when Mary arrived from work Saturday evening, October 8, 1921; that Mary was pale and extremely nervous; that she did not sleep well that night; that she went to church with Mary the following morning and had to take her out of the church because she seemed to be faint; that Mary collapsed about two o'clock Sunday afternoon; that she called in Dr. Caldwell; that he had Mary taken to Mercy Hospital and kept her there for nearly two months; that Dr. Kleutgen also attended her at the hospital; that she called the main office of plaintiff in error and reported to the chief operator that Mary was ill as the result of an accident which had occurred at the exchange on Saturday, and that the chief operator replied that she would send the visiting supervisor to see Mary; that Miss Stuber came to the hospital and reported that she was the visiting supervisor; that she told Miss Stuber about the accident which had occurred at the exchange Saturday afternoon and asked what the company would do

about it; that Miss Stuber said she would make inquiry and report the next day; that on Tuesday she saw Miss Stuber, and she reported that the company would take care of all the expenses; that she spoke to Miss Stuber about the bills after her sister had left the hospital, and that Miss Stuber told her not to worry about the bills because the company would take care of them. Another sister, Beatrice, testified to substantially the same facts.

Dr. Arthur C. Kleutgen testified that he first saw defendant in error at Mercy Hospital on Sunday evening, October 9, 1921; that she was then suffering from a left hemiplegia; that she gave him a history of her family and of herself; that he examined her carefully and found her arteries soft and pliable with no signs of arteriosclerosis, her kidneys normal with no signs of Bright's disease, and her heart healthy; that the Wasserman tests were negative; that, assuming the testimony of defendant in error as true, he was of the opinion that there was a causal relationship between the bang in the ear and the hemorrhage which caused the paralysis; that he formed this opinion from the fact that her family and personal history and his examination did not reveal any condition which could have caused the hemorrhage, and therefore the rupture of the blood vessel had to be accounted for by the increased blood pressure resulting from the nervous condition caused by the sudden shock.

Dr. Nathaniel H. Adams testified that he examined defendant in error on two occasions, the first on December 1, 1924, and the second about a week before the hearing before the arbitrator; that he found a post-hemiplegic state and that he considers her present condition permanent. He expressed the opinion that, assuming the testimony of defendant in error to be true, the bang in the ear might have produced the rupture of the blood vessel which caused the paralysis. He was unable to account for her condition in any other way.

On behalf of plaintiff in error Miss Elizabeth Brussow testified that on October 8, 1921, she was on duty, and that she remembered that was the last day defendant in error worked before her illness; that defendant in error did not report to her that day that she had sustained a severe bang in the ear; that she did not report to her that she was ill and that she did not ask for permission to go home; that she visited defendant in error at Mercy Hospital and talked with her about her trouble; that defendant in error told her she first noticed something wrong while she was preparing for church, and that she did not say that she had been injured at the telephone office.

Miss Anna B. Stuber testified that she is a graduate nurse and that she was employed by plaintiff in error as visiting supervisor throughout the period of the illness of Miss Mulligan; that the case was reported to her October 10, 1921, and that she went to Mercy Hospital to call on defendant in error; that no accident was reported to her and that she continued to visit defendant in error; that if defendant in error had claimed her illness was the result of an injury received while in the employ of the company it would have been reported to the claim department and would have been out of her hands; that she had nothing to do with accident cases; that she made reports of her visits and that these reports contain no reference to a claim of injury from a bang in the ear; that she was never told by defendant in error or either of her sisters that she had sustained an accidental injury while employed at the switchboard; that neither defendant in error nor either of her sisters ever asked her for compensation; that she did not say she would see the officials of the company about payment of compensation and that she did not report to Margaret that she had talked to them about it; that she did not tell Margaret that the company would take care of the hospital bills; that she did not tell defendant in error or either of her sisters that the expenses would be paid by

the company and that they need not worry about them. Copies of her reports, extending over a period from October 10, 1921, to February 25, 1924, were received in evidence. These reports show the condition of defendant in error from day to day but make no reference to an accidental injury.

Mrs. Marie Downelly testified that she was a supervisor employed at the main office of plaintiff in error in October, 1921; that she reported for work Monday morning and heard that defendant in error was at Mercy Hospital suffering from a paralytic stroke; that she and four girls took a collection for flowers, bought them and took them to the hospital the following Saturday; that she talked to defendant in error about her illness and that defendant in error did not say anything to her about receiving a bang in the ear or any other injury while working for the company. The chief operator, the senior supervisor and other supervisors who were on duty October 8, 1921, testified that defendant in error was operating B-boards 12 and 13 on that day, and that she did not report that she had received a severe bang in the ear, that she was ill as a result of it or that she was unable to continue her work; that she did not ask to be relieved and that she was not refused permission to go home. Other employees of plaintiff in error whose duty it was to handle claims for accidental injuries testified that no accident was reported to them and that no claim had been made for compensation by defendant in error or anyone for her. The physicians employed by plaintiff in error testified that they examined defendant in error from time to time after she returned to work and that they took her history, but that she never at any time reported to them that she had suffered a bang in the ear or that she had been injured while working at a switchboard.

Application for adjustment of claim was filed August 8, 1924. The case was heard by an arbitrator of the Industrial Commission. He reported a finding that defendant

in error did not sustain an accidental injury while in the employ of plaintiff in error October 8, 1921, and that she was not entitled to compensation. There was a review before one of the members of the Industrial Commission. The only testimony heard by him was that of defendant in error, which is limited to her statement that her condition had not improved since the hearing before the arbitrator. The Industrial Commission set aside the decision of the arbitrator and made a finding that defendant in error had sustained accidental injury arising out of and in the course of her employment and awarded her compensation for total permanent loss of the use of the left arm and for a fifty per cent loss of the use of the left leg. The Industrial Commission did not see or hear the witnesses testify and is in no better position to weigh the evidence than this court.

Assuming that the testimony of defendant in error is true, the award in this case is based on the opinion of two physicians that the nervous condition caused by the bang in the ear and the refusal of the supervisor to relieve her caused an increased blood pressure, which resulted in the hemorrhage, followed by paralysis. The opinion of Dr. Adams is based entirely on a hypothetical question, and the opinion of Dr. Kleutgen is based on the same hypothetical question and his examination of the patient. Neither of these doctors took her blood pressure the day she claims she was injured, nor the next day. In order to sustain this award we must find in the record evidence which shows a personal injury traceable to the employment. (*Ideal Fuel Co.* v. *Industrial Com.* 298 Ill. 463; *Hansen* v. *Turner Construction Co.* 224 N. Y. 331, 120 N. E. 693; *In re Maggelet,* 228 Mass. 57, 116 N. E. 972.) This court has many times held that liability cannot be based on a choice between two views equally compatible with the evidence but must be based on facts established by a preponderance of the evidence. Defendant in error is contradicted by every occur-

rence witness that testifies, and the visiting nurse and other employees of the company say no accident was reported. Examination of the record in this case convinces us that the finding of the Industrial Commission is manifestly against the weight of the evidence and that the award can not be sustained.

The judgment of the circuit court is reversed and the award set aside.

*Judgment reversed and award set aside.*