(No. 2853—

WILLIAM L. SMITH, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 14, 1940.*

CHARLES E. LEE, for claimant.

JOHN E. CASSIDY, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

Claimant was injured August 12th, 1935, while in the employ of respondent as a laborer at the Griffin Gravel Pit in Moultrie County. He was immediately removed from the scene of the accident to the office of Dr. Stephen Ambrose in Lovington, and from there to St. Mary's Hospital in Decatur where he was X-rayed, and where he remained for treatment until August 18th when he was returned to his home and remained in bed until September 9th.

The X-rays showed no fracture of the skull, no fracture of the ribs, and no evidence of fracture to the bony part of the chest, but revealed an old arthritic condition in the knee joint, and a floating cartilage that apparently had lodged in the tendon above the knee cap.

At the time Dr. Ambrose first examined claimant, he complained of pain in his head, chest and knee. Apparently the head and chest gave him no further trouble at that time, but he continued to suffer considerable pain from the knee injury. At the suggestion of Dr. Ambrose, claimant was given a treatment by Dr. Stewart Wood, an orthopedic surgeon of Decatur, and also was given diathermy treatments by Dr. Scaggs of Lovington for about eight weeks.

The knee continued to bother claimant, and at the suggestion of the Department of Highways, claimant was taken to Chicago and placed under the care of Dr. Henry B. Thomas, an orthopedic surgeon, who removed the floating cartilage on May 23d, 1936. Thereafter claimant was given physiotherapy treatments under the direction of Dr. Thomas,

and later returned to his home. The date of such return does not appear in the evidence, but apparently at that time claimant was able to do some light work. His condition improved, and from the evidence in the record it appears that so far as the injury to his knee is concerned, claimant had fully recovered from the effects of the injury, and was able to resume his former work on September 1st, 1936.

The record discloses that claimant had suffered a previous injury to his knee, and had the floating cartilage since 1928, but apparently it did not interfere with the performance of any of his duties. Inasmuch as there was no previous disability, and inasmuch as the accident of August 12th, 1935 aggravated the pre-existing condition, and thereby produced the disability in question, claimant is entitled to recover therefor under the provisions of the Compensation Act. *Rockford City Traction Co.* vs. *Ind. Com.*, 295 Ill. 358; *Ohlson* vs. *Ind. Com.*, 357 Ill. 335.

Claimant had been working for respondent for about a week prior to the injury, and his wages were fifty cents (50c) per hour. At the time of the accident he was forty-seven (47) years of age, was married, and had one child under the age of sixteen years. Compensation payments therefore must be computed on the basis of Eleven Dollars ($11.00) per week, in accordance with the provisions of the Compensation Act.

From all of the evidence in the record, there is no question but what the claimant, as the result of the injury to his knee, was temporarily totally disabled from the date of the accident, to-wit, August 12th, 1935, to September 1st, 1936. The respondent paid all medical and hospital bills and also paid claimant the compensation due him to October 19th, 1935. There remains due to claimant for temporary total disability as aforesaid, compensation at the rate of $11.00 per week from October 19th, 1935 to September 1st, 1936, to-wit, Four Hundred Ninety-five Dollars ($495.00).

The complaint which was filed on February 29th, 1936, was apparently based upon the injury to claimant's knee and leg, and no mention is made of a disability resulting from claimant's coronary condition. At the hearing, and in counsel's Brief and Argument, the claim is made that in addition to the disability resulting from the injury to his knee, claimant is completely and permanently disabled by reason of a

coronary disease resulting from the accident of August 12th, 1935.

In the case of *Madison Coal Co. vs. Ind. Com.*, 320 Ill. 65, the employee in his application made claim for temporary total disability as well as for partial disability, but made no claim for total permanent disability. Upon the hearing before the Industrial Commission, award was made for total permanent disability, and on review it was contended that the application was not sufficient to sustain the award. In that case the Supreme Court said:

"We do not regard it essential to a proper statement of claim for compensation for the applicant to state specifically the amount of compensation claimed. It is essential that he state informally the time, place, manner and character of the accident so that the employer will be advised of the nature of the claim and can properly prepare his defense. * * *

Under section 12 of the Act the employee is required to submit himself for medical or surgical examination when requested by the employer. The question for the Commission to determine was the amount of compensation due under the provisions of the Act, and no useful purpose could be served by requiring the employee to determine that question in advance and to state his conclusion in the application for adjustment of claim."

Claimant therefore is not limited to the disability alleged in his complaint, but is entitled to show any and every disability which he has sustained as the result of the accident in question.

It therefore becomes necessary to determine from the evidence in the record whether the claimant is completely and permanently disabled, as contended by him, and if so, whether such disability is the result of the accident of August 12th, 1935.

When the claimant was first examined by Dr. Ambrose on the day of the accident, he complained of pain in his head, chest and knee. From that time until after he returned to work about September 1st, 1936, very little appears in the record as to any complaint relative to claimant's heart condition.

In the fall of 1936 claimant took up work of different kinds, cutting broom corn, working in soy beans, driving a truck, and engaged in trapping, but the time he commenced or completed any of said work, or the time he was engaged therein, does not appear in the record. During the trapping season in the fall of 1936 claimant went to Dr. Ambrose's office, complaining of pain in his chest and arm, and stated that when he walked too long or too fast against a strong

wind, he would have to sit down and rest. This was the first time the pain in his chest was severe enough to cause him to seek the services of a physician, and he had never previously said anything to Dr. Ambrose to cause the Doctor to believe that he had any coronary condition.

Dr. Ambrose at that time made a diagnosis of coronary thrombosis and stated that it was his impression that the condition came on spontaneously. He also stated that in his opinion claimant was permanently disabled at that time (October 14th, 1937), and that as a general thing, that type of heart condition does not improve.

Dr. Ambrose was again called as a witness on July 19th, 1938 and testified that he had been attending claimant professionally since testifying in 1937; that the treatments consisted mainly of rest and tablets supposed to ward off angina attacks, of which the patient was complaining; that he also treated claimant for spitting up of blood; that in his opinion the accident of August 12th had nothing to do with claimant's present heart and lung condition; that in his opinion claimant was not wilfully misrepresenting or malingering but was suffering from what he termed a traumatic neurosis, in which he could not keep himself from feeling ill; and further gave it as his opinion that when a settlement was made, claimant would show considerable improvement in his condition. The Doctor further stated that from any examination he was able to make, he was unable to find anything wrong with claimant's heart; that there were no objective symptoms, but that claimant described beautifully the subjective symptoms of coronary trouble.

Dr. Scaggs testified that he first discovered a heart condition called angina pectoris in the fall of 1936; that in giving a history of the case, claimant said that as soon as he started husking corn he got a pain in his heart and had to quit; that every time he took any exercise he would have this pain. Dr. Scaggs stated that in his opinion the claimant's heart condition is a result of his accident of August 12th, 1935; and that it is doubtful if claimant will ever be able to do manual labor.

Dr. Stanley, a heart specialist, stated that he made an examination of claimant January 5th, 1937, and took his history, examined his heart by the usual methods of physical examination, and took an electro-cardiograph; that findings were essentially negative throughout; that he could come to

no conclusion from his examination, but from claimant's history, he was convinced that claimant had angina pectoris, but the electro-cardiograph did not show any such condition; that taking the history into consideration, it was his opinion that claimant's heart condition could have been a result of the injury of August 12th, 1935; that claimant is totally disabled from doing any type of manual labor; that angina pectoris is much more prevalent in persons having mental worry and great responsibility than in the laboring class; that it is a disease more among business and professional men than laboring men; that hardening of the arteries usually manifests itself in the fifth and sixth decades of life.

Dr. E. S. Moore, for fifteen years Superintendent of Illinois Research Hospital, Emeritus Associate Professor of Medicine, University of Illinois, and heart specialist for thirty-five years, examined claimant at the request of Dr. Thomas to see if claimant had a normal heart or was suffering from angina pectoris. Dr. Moore obtained a personal history, made a physical examination of claimant's chest and abdomen, and took electro-cardiographs and X-rays. As the result of such examination, Dr. Moore stated that he found claimant's heart was of normal size, the rate was regular, tones clear, no adventitious sounds, i. e. no sounds other than normal; that claimant had a tender point on the left side at the nipple line; that this tender point is rarely seen in organic heart disease but is frequently present in nervous·neurotic persons without heart disease; that there was no evidence of coronary sclerosis; that patient's condition was significant; that he was emotionally disturbed, cried freely, hands trembled; that he broke out in perspiration and the water ran down his sides; that he showed great anxiety and expressed fear that his attacks would return; that his heart beat was regular; that there were no objective symptoms of any coronary disease which would account for the pain described by claimant; that the frequency, the type of radiation, the unusually constant long periods of discomfort as stated by claimant, are not the customary characteristic picture of angina of organic origin; that in his opinion claimant did not have angina pectoris, based on any organic lesion; that in a man who was emotionally unstable generally, to be told that he had angina pectoris would make a profound impression

and might account for the condition in which claimant was at the time of his examination.

The evidence in the record satisfactorily shows that at the time of the last taking of testimony, to-wit, July 19th, 1938, the claimant was wholly incapable of performing any manual labor. That, however, is not sufficient to entitle him to an award. He must also show that his condition is the result of the accident of August 12th, 1935. As said in the case of *Rittler* vs. *Ind. Com.*, 351 Ill. 338-353:

"The claimant has the burden of proving not only that an accident happened but also that the accident was the proximate cause of the injury suffered or the condition of incapacity for which compensation is sought—that is, he must prove the causal connection between the accident and the condition of the incapacity which constitutes his claim for compensation."

In considering a somewhat similar case, our Supreme Court in the case of *American Smelting Co.* vs. *Ind. Com.*, 353 Ill. 324, said:

"The Workmen's Compensation Act was enacted for a beneficient purpose by requiring the employer to bear a part of the burden sustained from occupational diseases contracted or injuries sustained by the employee while in the service of the employer and while in the discharge of his duties as such employee. However, before an employee is entitled to recover an award under the provisions of this Act he must bring himself within the provisions of the statute."

Also, on page 328:

"The liability cannot rest upon imagination, speculation or conjecture but must be based on facts established by a preponderance of the evidence, neither can it rest upon a choice between two views equally compatible with the evidence."

This statement of the law was previously announced in numerous cases. *Illinois Bell Telephone Co.* vs. *Ind. Com.*, 325 Ill. 102; *Byram* vs. *Ind. Com.*, 333 Ill. 152; *Rittler* vs. *Ind. Com.*, 351 Ill. 338.

In determining the question here involved, consideration must be given to the following:

1. Claimant had no trouble in his chest of sufficient importance to cause him to seek the services of a physician, for more than a year after his accident.

2. The first doctor that examined the claimant on account of his heart condition (Dr. Ambrose) diagnosed his condition as "coronary thrombosis", and was of the opinion that the accident of August 12th, 1935 had nothing to do with such heart condition.

3. The next doctor that examined the claimant on account of heart condition (Dr. Scaggs) diagnosed his condition as "angina pectoris", and was of the opinion that such condition was the result of the accident in question.

4. The next doctor that examined the claimant on account of his heart condition (Dr. Stanley) stated that he could come to no conclusion from his examination, but from claimant's history he concluded that claimant had angina pectoris, and gave it as his opinion that such condition *could* have been the result of the accident.

5. The next doctor that examined the claimant on account of his heart condition (Dr. Moore) found no objective symptoms of any coronary disease which would account for the pain described by claimant, and also stated that "in a man who was emotionally unstable generally, to be told that he had angina pectoris would make a profound impression and might account for the condition in which claimant was at the time of his examination".

6. None of the medical men who examined claimant found any objective symptoms of any coronary disease, and the electro-cardiograph indicated nothing abnormal.

7. The testimony of Edward Kirby who was a patient at St. Luke's Hospital when claimant was there, and who was staying at the Y. M. C. A. Hotel in Chicago at the same time claimant was there. He stated that claimant on one occasion said he got hurt in a gravel pit and if there was any chance at all he felt like he wanted something out of it. Kirby also stated that claimant "had a crutch and a cane when he was sent to the Y. M. C. A. Hotel from the hospital, but he discarded the crutch, shoved it under his bed in his room"; also that on one occasion between June 14th and June 20th, 1936 they walked from the Y. M. C. A. Hotel to the new Outer Drive Bridge, then to 30 North Michigan Avenue, and from there back to the Hotel, then, after dinner, walked from the Hotel to the Illinois Research Hospital and back, a total of ten or eleven miles, at which time claimant requested Kirby not to let the nurses or Dr. Thomas "know but what he used his cane all the time, as he thought that it would hurt him in getting anything out of his claim, and he said he could walk fairly well without it".

We conclude from a consideration of all of the evidence in the record that the claimant has failed to establish by the

greater weight of the evidence that the coronary condition of which he now complains is the result of the accident of August 12th, 1935, and award for any disability on account of such condition is denied.

Claimant is entitled to an award for temporary total disability resulting from injury to his knee as hereinbefore set forth.

An award is hereby made in favor of claimant, William L. Smith, for temporary total disability to his right knee as hereinbefore set forth, in the sum of Four Hundred Ninety-five Dollars ($495.00).

This award being subject to the provisions of an Act entitled "An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof", (Illinois Revised Statutes, 1939, Bar Assn. Edition, Chapter 127, Pars. 180-181), and being subject also to the terms of an Act entitled "An Act Making Appropriations to the Auditor of Public Accounts for the Disbursement of Certain Moneys Until the Expiration of the First Fiscal Quarter After the Adjournment of the Next Regular Session of the General Assembly", approved July 1st, 1939 (Session Laws 1939, page 117); and being, by the terms of the first mentioned Act, subject to the approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the Road Fund in the manner provided by the foregoing Acts.