(No. 3023— ▇▇▇▇▇)

Margaret Crum, Claimant, *vs.* State of Illinois, Respondent.

*Opinion filed October 9, 1940.*

*Rehearing denied November 12, 1940.*

William John Granata, for claimant.

John E. Cassidy, Attorney General; Murray F. Milne, Assistant Attorney General, for respondent.

MR. JUSTICE LINSCOTT delivered the opinion of the court:

Margaret Crum, the claimant, filed her complaint in this court on the 5th day of November, 1936, and alleged that on the 7th day of December, 1935, she was employed by the State of Illinois, Department of Public Welfare at the Elgin State Hospital, Elgin, Illinois, as a nurse; that her earnings for the preceeding year were One Thousand Sixty-eight Dollars ($1,068.00), plus maintenance; that on that date, she was attempting to feed one Rosalie Coleman, an insane patient, who was infected with tuberculosis; that said patient was very resistive and the claimant had to resort to force feeding, and while she was attempting to feed this patient, and was holding the patient's nose at the time, the patient coughed, and the milk, which was the food that claimant was attempting to have the patient take, combined with purulent sputum was spit all over claimant's face, hair and uniform.

It is further charged that as a direct and proximate result thereof, the claimant became infected with tuberculosis, and was confined to her bed on the 8th day of January, 1936, and had to be confined to her bed for a period of several years; that her lungs will be permanently impaired and that she will not be able to again perform the duties of a nurse.

It was also charged that immediately after the occurrence of the above act the claimant reported the incident to Dr. D. L. Steinberg, her superior officer.

It was also averred that the State of Illinois has supplied the claimant with complete hospitalization and medical care

and attendance, and that the claimant has not received any salary since February, 1936; that she is now convalescing and is being treated for her disease at her home.

The claimant further averred that she has consulted physicians and tuberculosis specialists and the record shows that many x-rays were taken.

Claimant asked for Sixteen and 25/100ths Dollars ($16.25) per week for one hundred (100) weeks, temporary total disability; and Sixteen and 25/100ths Dollars ($16.25) per week for one hundred (100) weeks for total partial disability.

It was also averred that at the time of the injury complained of she was twenty-six (26) years of age.

Both counsel for claimant and also the Attorney General, who represents the State, have furnished exhaustive briefs, and given much time to this case. The testimony of several doctors who treated the claimant, is in the record. The complaint attempts to allege facts and circumstances that would bring this case under the Compensation Act. It will, therefore, be unnecessary to discuss the common law liability or liability under the Occupational Diseases Act.

The title of the Compensation Act insofar as this question is concerned, provides as follows: "An Act to promote the general welfare of the people of this State by providing compensation for accidental injuries or death suffered in the course of employment within this State * * * *" Section 3 of the Act provides that "The provisions of this Act hereinafter following shall apply automatically and without election to the State, county, city, town, township, incorporated village or school district, body politic or municipal corporation, and to all employers and all their employees engaged in any department of the following enterprises or business* * *"

The claimant was a graduate nurse and an attendant at the Elgin State Hospital. In other cases we have heretofore held that employees of the Elgin State Hospital come within the Compensation Act.

The question for this Court to determine is whether or not this claimant suffered an accidental injury within the meaning of the Compensation Act.

Counsel for claimant puts it this way: "We next are confronted with the question of whether there is a causal

relation between the coughing and expectoration in claimants face and her contracting of tuberculosis.''

It is a matter of common knowledge that tuberculosis is a germ disease. The evidence shows conclusively that claimant is infected with tuberculosis, and the evidence shows that the reprehensible act of the insane patient, that claimant was feeding did occur. The evidence shows that there are many patients at this institution infected with tuberculosis, and it seems to be a matter of common knowledge that germs of this disease may be inhaled from the air as one walks on the street or attends any meeting where there are a large number of people. The disease may be contracted in innumerable ways. The claimant first entered the services of the Elgin State Hospital in May, 1931, and so far as she knows, she was then in a healthy condition and so remained until January, 1936, although it does not appear that she was ever examined especially for tuberculosis. She testified that she came in daily contact with tubercular patients. From the whole record, it is possible that she contracted this disease during the course of her employment at the Elgin State Hospital. The patient that claimant was taking care of on the 7th day of December, 1935 was an active tubercular insane person, very resistive and had positive tubercular sputum. She did not eat and force feeding was necessary. While claimant was performing her duties, she was of necessity very close to this patient. About a month after the incident occurred and the spitting had taken place, claimant was taken down with pleurisy and had to go to the hospital, and when she went there, she was running a temperature of 99 to 100, and she was put to bed. Pleurisy, as we understand it, is an inflammation of the pleura; and it is accompanied with fever, pain, difficult respiration, cough, and exudation. When a person has this ailment, the resistance of the human body to all kinds of germs is greatly lowered.

The evidence shows that this claimant had the best of medical care and attention, both from her husband and other doctors and specialists in this particular ailment. Claimant went to bed on January 7, 1936, just thirty days after the spitting incident.

Dr. McShane testified that the claimant, his wife, has had pulmonary tuberculosis since January, 1936. He was asked if he knew how that condition came to be brought

about and his answer was that she worked at the Burr Cottage and was taking care of the tuberculosis patients and she came in contact with the tuberculosis patients constantly and in one particular case the patient expectorated in her face; that this latter incident took place sometime in December, 1935. Dr. McShane was asked a hypothetical question as to the cause of this ailment. He stated that he had an opinion and in his opinion there is a causal relation as that is the way tuberculosis is spread by the expectoration of positive tubercular germs in the sputum in and about the face of the hypothetical person.

Dr. Kenneth G. Bulley, a duly licensed physician and surgeon and a specialist in tuberculosis, also testified. At that time he was superintendent and medical director of Kane County Springbrook Sanitarium at Aurora, Illinois. He testified that he had treated claimant, examined many x-rays and was familiar with her ailment. He was shown claimant's exhibit one, that being an x-ray that was taken of claimant. He testified that that x-ray was taken on December 19, 1935 at the Elgin State Hospital. He was asked what pathology was found in that picture, and he stated that it was an x-ray picture of the chest and portrayed the lungs of the claimant and showed an active pulmonary tuberculosis and minimal lesion in the right upper lobe; that the picture shows the markings about the root of the lung on the left to be heavy and suggested some tubercular disturbance. A hypothetical question was put to this witness in which all the facts were apparently included and he stated that it was his opinion that daily contact with insane tubercular patients and the spitting incident described, were sufficient to cause her to break down with active pulmonary tuberculosis.

There is no evidence in the record to show that any fluids or sputum coughed in the face of claimant ever entered her body through the nose, mouth or abrasion of the skin, or in any other way. The above named doctors were the only ones who testified in the case. There is nothing in the record to show at what time any of the tuberculosis germs became active and infected claimant. It is possible that such proof can never be produced in tubercular patients. The record does show that after claimant was put to bed she began to improve, and that the improvement has been gradual, but certain.

As said above, the problem for this court to determine is: Is this an accidental injury within the law?

It is the view of this court, as expressed in numerous cases, that the word "accident" is not a technical legal term. No legal definition has been given or can be given which is both exact and comprehensive as applied to all circumstances. Those things which happen without design are commonly called an accident,—at least in the popular acceptance of the word. Any event unforseen, not expected by the person to whom it happened, is included in the term. In *Matthiessen & Hegeler Zinc Co.* vs. *Industrial Board,* 284 Ill. 378, the court defined the term "accident" as follows: "The words 'accident' and 'accidental injury' imply, and the provisions for notice to the employer within thirty days after an accident and his report to the Industrial Board of accidental injuries show, that an injury, to be accidental or the result of an accident, must be traceable to a definite time, place and cause, but if there is such a definite time, place and cause and the injury occurs in the course of the employment the injury is accidental within the meaning of the act and the obligation to provide and pay compensation arises. While it is not intended, and perhaps not possible, to give a definition of the words used in the act as applied to all possible circumstances, it may safely be said that an injury is accidental, within the meaning of the act, which occurs in the course of the employment unexpectedly and without the affirmative act or design of the employee." The Compensation Act of Illinois does use the words "accident" and "accidental injury."

In the case of *Renkel* vs. *Industrial Commission,* 109 Ohio State, 152 the court held that pulmonary tuberculosis contracted in the course of employment was not compensable under the Workmen's Compensation Act, but the State of Ohio has a different statute and constitution and their statute does not use the words "accident" or "accidental injury."

The Supreme Court of Illinois, in the case of *Peru Plow Co.* vs. *Industrial Com.,* 311 Ill. 216, at page 220 held that the words "accident" and "accidental injury," as used in the Compensation Act, were meant to include every injury suffered in the course of employment for which there was an existing right of action at the time the act was passed, and to extend the liability of the employer to make compensation for injuries for which he was not previously liable and to fix the

limit of such compensation, and quoted *Matthiessen & Hegeler Zinc Co.* vs. *Industrial Com.,* supra. The same court held that occupational diseases are not covered by the Compensation Act, although not all diseases are to be excluded from the purview of the Compensation Law.

It is the settled law of Illinois that the burden is upon claimant to prove his case by a greater weight or preponderance of the evidence. There is nothing in the record to show that claimant contracted tuberculosis on December 7, 1935. It does however, show that she was exposed on that date. She was likewise exposed all during the time of her employment.

It was held in the case of *Byram* vs. *Industrial Com.,* 333 Ill. 152, that liability under the Compensation Act cannot rest upon imagination, speculation or conjecture or upon a choice between two views equally compatible with the evidence but must be based upon facts established by a preponderance of the evidence, and where there is no positive evidence as to exactly how an accidental death occurred but the greater weight of the evidence indicates that the deceased employee committed suicide by jumping from his employer's office window early in the morning before other employees came to work, an award of compensation must be set aside where it is based only upon conjecture that the deceased might have accidentally fallen out of the window.

The record does not disclose how long tubercular germs might remain dormant in the human body.

Section 24 of the Compensation Act requires that notice be given within thirty days, and demand for compensation be made and requires that the claim must be filed within one year, all of which this court has held to be jurisdictional.

In the *Peru Plow Co.* case, supra, it was held that in order that the disability be by reason of an accidental injury or the result of an accident it must be traceable to a definite time and place of origin. There must be some definite thing happen which can be pointed to as the immediate cause of the breakdown, although the employee may have been able to work in similar conditions for a considerable period of time prior to the happening of the event which was the immediate cause of his breakdown. That this must be considered the intention of the legislature in passing the act is shown by the provisions of the act limiting the time in which notice may

be given to the employer. If a definite time cannot be ascertained it is impossible to give the notice required by the act.

The medical testimony is before the court. The tuberculosis existed in January, 1936, and at that time it was a case of moderately advanced pulmonary tuberculosis. It was not within our law connected with the incident of December 7, 1935, and the record is silent as to how long it would take to develop moderately advanced pulmonary tuberculosis.

There is nothing in the record to show that claim for compensation was ever made within six (6) months after the accident as provided by Section 24 of the Workmen's Compensation Act.

For the reasons herein set forth, the claim must be denied.